150 Ill. App.3d 673 (1986)
502 N.E.2d 72
In re MONICA MACEDO (The People of the State of Illinois, Petitioner-Appellee,
v.
Monica Macedo, Respondent-Appellant).
No. 4-86-0300.
Illinois Appellate Court  Fourth District.
Opinion filed December 15, 1986.
*674 Jeff Plesko and Maureen M. McCord, both of Guardianship & Advocacy Commission, of Champaign, for appellant.
Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Linda Cullom, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.
Judgment reversed.
JUSTICE McCULLOUGH delivered the opinion of the court:
Following a hearing in the circuit court of Champaign County, respondent was declared to be a person subject under the Mental Health and Developmental Disabilities Code (Code) (Ill. Rev. Stat. 1985, ch. 91 1/2, par. 3-503(a)) to involuntary admission to a mental health facility. The court ordered that respondent be hospitalized at the Adolph Meyer Zone Center in Decatur. Respondent now appeals, contending that (1) the record fails to demonstrate that her alleged second request for discharge from voluntary admission was in writing; (2) the procedure for involuntary commitment was initiated prior to her alleged second request for discharge; (3) the circuit court erred in not applying adult standards in determining whether she was subject to involuntary commitment; and (4) the involuntary commitment procedure violated her rights of due process and equal protection under both the Federal and Illinois constitutions. We reverse.
Because we conclude that the record fails to show whether respondent filed a written request for discharge, we need not address the other issues raised by her on appeal.
The first pleading, filed April 18, 1986, is entitled "Petition for Review of Admission of Minor." This petition indicates it was filed pursuant to section 3-503 of the Mental Health and Developmental Disabilities Code (Code) (Ill. Rev. Stat. 1985, ch. 91 1/2, par. 1-100 et seq.). As a part of that petition is a form entitled "Application by an Adult for the Admission of a Minor." An order setting hearing on the petition for April 24, 1986, was entered on that same day, April 18, 1986. Notice of the hearing was served upon the respondent and others by United States mail by the clerk of the court on April 21, 1986.
It is first necessary to review section 3-502 of the Code. That section provides that any minor 16 years of age or older may be admitted to a mental health facility as a voluntary patient under article IV, if the minor executes the application. It further states:
"A minor so admitted shall be treated as an adult under Article *675 IV and shall be subject to all of the provisions of that Article." Ill. Rev. Stat. 1985, ch. 91 1/2, par. 3-502.
The respondent was born April 27, 1969, and was 16 years old, when, according to the State's witness, Dr. Arthur Traugott, she voluntarily admitted herself on April 7, 1986, to the psychiatric unit of Mercy Hospital in Urbana, Illinois. Dr. Traugott testified that the respondent at some point in the first week after April 7, 1986, signed a request for release but rescinded it and then later again requested release. No evidence of a written notice of desire to be discharged was presented. Dr. Traugott was the only witness to testify concerning the status of the respondent. The unsworn petition signed by the mother states that the respondent was admitted April 14, 1986, upon the mother's application. Although the mother testified, no questions were directed to the child's status as a voluntary admittee. The only other indication of the minor's status is a social investigation report indicating a request for discharge by respondent on April 16, 1986. There is nothing in the record to indicate that the request was in writing.
The record and evidence in this proceeding show the respondent to be a voluntary patient, and for that reason the procedures under section 3-503 are not applicable.
As a result of respondent's voluntary admission, the provisions of article IV of the Code applied to any efforts to have her involuntarily committed. (Ill. Rev. Stat. 1985, ch. 91 1/2, par. 3-502.) Involuntary commitment proceedings may be commenced if, within five days of respondent's written notice of her desire to be discharged, a petition and two certificates are filed with the court. Ill. Rev. Stat. 1985, ch. 91 1/2, par. 3-401(b).
 1, 2 Because involuntary commitment proceedings affect important liberty interests, the need for strict compliance with statutory procedures is essential. (In re King (1986), 148 Ill. App.3d 741.) A determination that respondent is subject to involuntary commitment must be based on clear and convincing evidence. People v. Lang (1986), 113 Ill.2d 407, 499 N.E.2d 1105; In re Stephenson (1977), 67 Ill.2d 544, 556, 367 N.E.2d 1273, 1278.
The right to request to be discharged is an important procedural safeguard designed to encourage individuals to seek voluntary submission to treatment for their mental problems. One who is voluntarily admitted is more likely to be rehabilitated than one who is forced to submit to treatment. An individual who recognizes her need for treatment may, however, fail to recognize or to seek the benefits of voluntary admission if, following her voluntary admission, she can be subject *676 to involuntary commitment procedures less rigorous than those specified in the Code. (See In re Hays (1984), 102 Ill.2d 314, 319-20, 465 N.E.2d 98, 100.) The necessity of a written request for discharge ensures that respondent not only believes that she has, but that she actually retains, control of her voluntary status by requiring clear and convincing evidence of her determination to terminate that status. This Code provision assures respondent that her initial voluntary admission will not be summarily transformed into an involuntary commitment by virtue of her decision to voluntarily submit to treatment. Moreover, this Code provision requires a manifestation of a conscious and voluntary decision in the form of a writing, by respondent, to terminate her voluntary admission and thereby to forego the attendant benefits and procedural safeguards.
No matter how benevolent the motives of a witness, ambiguous or vague testimony concerning a request for discharge may nonetheless be founded upon erroneous assumptions or upon misinformation, or itself be erroneous. To rely on such testimony would ultimately vitiate the legislative intent to encourage voluntary admissions.
 3 The Code specifically requires that the request for discharge be in writing and that the mental health center maintain a record of the request. (Ill. Rev. Stat. 1985, ch. 91 1/2, pars. 3-401(b), 3-202(a).) The clearest and most convincing evidence that a written request for discharge has been made is always the written request itself. (See Gillson v. Gulf, Mobile & Ohio R.R. Co. (1969), 42 Ill.2d 193, 199, 246 N.E.2d 269, 273; Forman Realty Corp. v. Brenza (1957), 11 Ill.2d 531, 541, 144 N.E.2d 623, 628 (and cases cited therein).) Since the record fails to reflect the existence of the statutorily prescribed basis for the circuit court's involuntary commitment of respondent, the circuit court's judgment was erroneous. In re Whittenberg (1986), 143 Ill. App.3d 836, 838, 493 N.E.2d 662, 663.
Reversed.
SPITZ, P.J., and WEBBER, J., concur.