*In re* JAMES GUTHRIE, Asserted to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. James Guthrie, Respondent-Appellant).

Third District   No. 3—89—0182

Opinion filed March 8, 1990.

Jeff M. Plesko, of Guardianship & Advocacy Commission, of Carbondale, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Rita Kennedy Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOMBACHER delivered the opinion of the court:

The trial court found that the respondent, James Guthrie, was a person subject to involuntary admission and ordered him hospitalized in the Department of Mental Health and Developmental Disabilities (Ill. Rev. Stat. 1987, ch. 91½, par. 1—119(2)). The respondent appeals, arguing among other things that the petition to involuntarily commit him was not timely filed.

The record shows that on January 18, 1989, the respondent was admitted to Zeller Mental Health Center, apparently as a voluntary patient. On February 14, 1989, the State filed a petition, with the required certificates, for the involuntary admission of the respondent. Dr. Sudesh Suri, who executed one of the State's accompanying certificates, specifically indicated in his certificate signed on February 9, 1989, that the respondent had signed a written five-day notice of his request for discharge, which had expired on February 9. Dr. Suri further indicated in his petition that the respondent had refused to rescind his request.

Section 3—403 of the Mental Health and Developmental Disabilities Code (the Code) (Ill. Rev. Stat. 1987, ch. 91½, par. 3—403) provides that where a petition and accompanying certificates are not filed within five business days of a voluntary patient's request for dis-

charge, the patient shall be discharged from the facility at the earliest appropriate time.

On appeal, the respondent initially argues that the trial court's judgment should be reversed because the State failed to attach to its petition a copy of the respondent's written request for discharge. The respondent also argues that the State's petition was not timely filed.

■ The State, on the other hand, initially contends that the respondent has waived any argument regarding his written request for discharge and the timeliness of the petition, by failing to raise the issues in the trial court. Because this involuntary commitment case involves alleged procedural errors, we elect to consider the issues involved. *In re Riviere* (1989), 183 Ill. App. 3d 456, 539 N.E.2d 451.

■ An analogous situation was presented in *In re Macedo* (1986), 150 Ill. App. 3d 673, 502 N.E.2d 72. The *Macedo* court reversed the trial court's decision to involuntarily commit the respondent, because the record failed to show whether the respondent had filed a written request for discharge. We note that we are uncomfortable with the reasoning set forth in *Macedo*, because it is contrary to the general rule that in the absence of a complete record, it will be presumed that the trial court acted correctly. However, in the instant case, one of the State's own required certificates showed that the respondent had signed a written request and that it had expired on February 9. The State's petition was not filed until February 14, which was five days beyond the deadline for its filing. Furthermore, the record indicates that the respondent was not released. Therefore, unlike *Macedo*, the record in the instant case affirmatively shows the State's failure to comply with the five-day requirement of section 3—403 of the Code.

The State nevertheless argues that the respondent was properly involuntarily committed pursuant to section 3—701 of the Code (Ill. Rev. Stat. 1987, ch. 91½, par. 3—701), since the petition filed on February 14 was ostensibly brought pursuant to that section and it satisfied all the requirements of a section 3—701(a) initial commitment petition. The State cites *In re Shaw* (1987), 153 Ill. App. 3d 939, 506 N.E.2d 456, in support of its proposition.

■ We find that the State's reliance on *Shaw* is misplaced. *Shaw* is distinguishable in that it involved the propriety of a second involuntary petition, whereas in the instant case the State's single petition was brought as a direct result of the respondent's initial discharge request. Moreover, we decline to follow the reasoning of *Shaw* to the extent that it is inconsistent with the principle that a mandatory requirement of discharge under the Code cannot be circumvented by utilizing other sections of the Code. See *In re Vancil* (1989), 183 Ill.

App. 3d 204, 538 N.E.2d 1372 (unambiguous statutory involuntary commitment procedures affecting liberty interests will be strictly enforced).

The procedure provided in section 3—403 was not followed in this case. We therefore reverse the trial court's involuntary commitment of the respondent. Our decision renders moot the remaining issues raised by the respondent.

The judgment of the circuit court of Peoria County is reversed.

Reversed.

HEIPLE, P.J., and SCOTT, J., concur.